**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | |
|---|---|
| **APRIL ANDERSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:17-cv-00609** |
| ) | **Judge Aleta A. Trauger** |
| **SUMNER COUNTY SHERIFF'S** ) | |
| **OFFICE et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM

Before the court is the defendants' Corrected Motion to Dismiss Amended Complaint (Doc. No. 20). The motion has been fully briefed and is ripe for review. For the reasons stated herein, the court will grant the motion and dismiss this action in its entirety.

## I.     Factual and Procedural Background

The plaintiff filed her initial Complaint in this action on March 17, 2017, asserting claims against defendants the "Sumner County Sheriff's Office and/or Sumner County," Sumner County Sheriff Sonny Weatherford, Sumner County Chief Deputy Aaron Pickard, and Officers Kelly Smart, Keith Bean, Geoffrey Wall, and Jordan Holleran. (Doc. No. 1.) Rather than filing a responsive pleading, the defendants filed a Motion to Dismiss (Doc. No. 5) and supporting Memorandum (Doc. No. 6). The plaintiff filed a Response to Defendants' Motion to Dismiss (Doc. No. 9) and, at the same time, a Motion to Amend Complaint as a Matter of Course Pursuant to Fed. R. Civ. P. 15(a)(1)(B) (Doc. No. 10) and the Preliminary Psychiatric Report (Doc. No. 8), prepared by the plaintiff's treating psychiatrist at her attorney's request. Strictly speaking, the motion was unnecessary, as the plaintiff did, in fact, have a right under Rule 15(a)

to amend her complaint in response to the defendant's Motion to Dismiss without seeking leave of court. The court nonetheless granted leave, and, after prompting by the court, the plaintiff has now filed her Amended Complaint. (Doc. No. 26.)[1]

In her Amended Complaint, the plaintiff alleges that she is an "older African-American female" (Am. Compl. ¶ 35) who, at the time she initiated this action, was employed by the Sumner County Sheriff's Office as a Correctional Officer at the Sumner County Jail in Gallatin, Tennessee. (Am. Comp. ¶¶ 1, 3.) Defendants Wall and Holleran, also Correctional Officers, are white males who were twenty and twenty-one years old, respectively, in October 2016. (Am. Compl. ¶¶ 7, 8.) On October 22, 2016, the plaintiff, Wall, and Holleran left work at the same time and walked to the parking lot together. (Am. Compl. ¶ 20.) Wall and Holleran walked to Wall's vehicle while the plaintiff walked to her vehicle. When Wall and Holleran reached Wall's vehicle, Wall reached in and removed something from the vehicle. The plaintiff initially did not know what it was, but she saw a red laser light hitting her vehicle and around her feet. She then saw that Wall was holding a gun in his hand that had a flashlight and a laser pointer. (Am. Compl. ¶ 21.) In response, the plaintiff, very frightened, screamed at Wall to stop before she was accidentally shot. Wall laughed in response. The plaintiff's fright and anxiety at having an actual gun pointed at her caused her to need to use the bathroom, so she returned to the Sheriff's Office to do so. While she walked quickly back into the building, Wall kept the gun and its red laser light trained on her, causing her additional fear and mental distress. The plaintiff used the restroom, composed herself, and returned to her vehicle after she saw that Wall and Holleran had left. (Am. Compl. ¶ 21.)

---

[1] The plaintiff's Motion to Amend incorporated the new paragraphs she sought to add to her original pleading, but the plaintiff did not submit with her motion a separate proposed Amended Complaint.

The plaintiff asserts that the acts of Wall and Holleran "were likely violations of Tennessee criminal law." (Am. Compl. ¶ 22.) Specifically, the plaintiff cites to the Tennessee statutes that define the offense of aggravated assault as the act of "intentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury" if such action also involves "the use or display of a deadly weapon." Tenn. Code Ann. §§ 39-13-101(a)(2), 39-13-102(a)(1)(A)(iii). (Am. Compl. ¶ 23.)

The plaintiff alleges that Sumner County Sheriff's Office policy requires all employees to report to their immediate supervisor any violation of the law by anyone on the jail premises. (Am. Compl. ¶ 24.) After this incident, the plaintiff "followed proper procedure for such an event occurring on the premises of the jail" (Am. Compl. ¶ 21) by immediately calling her supervisor, defendant Kelly Smart, to report that she had been the victim of an aggravated assault on the jail premises. (Am. Compl. ¶ 24.) Under jail policy, Smart, as the plaintiff's supervisor, was required to notify the appropriate deputy sheriff, who was supposed to "investigate, report, and, if necessary, obtain a warrant for the arrest of the person." (Am. Compl. ¶ 24.)

The plaintiff also reported that Holleran had violated jail policy by bringing a personal firearm onto jail premises. The plaintiff further alleges that, because Holleran was not yet twenty-one years old at the time,[2] it was illegal for him to possess a firearm without a permit and that her report gave rise to a need to investigate Holleran and Wall for a possible violation of Tenn. Code Ann. § 39-17-1317(a)(1), which pertains to the illegal possession and carrying of a firearm. (Am. Compl. ¶ 25.)

Based on jail policy, the plaintiff reasonably believed that Smart and the officers above her in the chain of command would follow jail procedures for investigating the crimes reported

---

[2] The plaintiff alleges elsewhere that Holleran was twenty-one years old on October 22, 2016. (Am. Compl. ¶ 8.) She alleges that Wall was only twenty. (Am. Compl. ¶ 7.)

by the plaintiff. (Am. Compl. ¶ 25.) Smart, however, took no meaningful action to report, investigate, or arrest Holleran and Wall for their crimes or to report them to a deputy sheriff or the sheriff. (Am. Compl. ¶ 26.) Instead, she issued a verbal counseling to Wall and directed him to apologize to the plaintiff. (Am. Compl. ¶ 27.)

Upon later learning that Smart had not reported the incident up the chain of command as required by jail policy, the plaintiff submitted a written report concerning the event to Captain Canter, who is not a defendant in this action. (Am. Compl. ¶¶ 28–29; Orig. Compl. Ex. A, Doc. No. 1-1.) Captain Canter disclosed the statement to defendant Bean, who advised Canter that he would look into it and would brief Chief Deputy Sheriff Aaron Pickard about it. (Am. Compl. ¶ 30.)

Bean thereafter investigated the incident by interviewing the plaintiff, Wall, Holleran, and Smart. (Am. Compl. ¶ 31.) On November 9, 2016, he completed the investigation and prepared a written report. (Am. Compl. ¶ 32; Orig. Compl. Ex. B, Doc. No. 1-2.) Bean's report, according to the plaintiff, confirms her version of events and her assertion that Wall, aided and abetted by Holleran, committed the offense of aggravated assault, among other offenses, by intentionally pointing a weapon at her and causing her to reasonably fear imminent bodily injury. (Am. Compl. ¶33.) Rather than arresting and charging Wall and Holleran with criminal offenses, however, Bean sustained the plaintiff's complaint against them and recommended that Wall be issued a written reprimand and that his duty firearm carry privilege be suspended indefinitely, that Holleran receive a counseling session for failing to report misconduct known to personnel, and that Smart receive a counseling session for failing to hand the incident appropriately. (Doc. No. 1-2.)

On November 10, 2016, Bean submitted his report to Chief Deputy Pickard. (Am.

Compl. ¶ 36.) On November 17, 2016, Pickard prepared written disciplinary statements for Wall and Holleran, adopting Bean's factual findings and disciplinary recommendations. (Orig. Compl. Exs. C & D, Doc. Nos. 1-3, 1-4.) The plaintiff alleges that Pickard failed, however, to adopt her most serious allegations regarding Wall's act of following her with the laser beam from the gun as she walked back into the building. (Am. Compl. ¶ 37.) Pickard was on notice that Wall and Holleran had committed the offense of aggravated assault, but, instead of arresting them, he adopted Bean's disciplinary recommendations. (Am. Compl. ¶ 38.) On November 18, 2016, Sheriff Weatherford approved and adopted Pickard's actions (Orig. Compl. Ex. C & D, Doc. Nos. 1-3, 1-4), despite also being on notice that Wall and Holleran had committed the offense of aggravated assault while on jail premises, and despite being on notice that Pickard, Smart, and Bean had "statutory duties to report, investigate, and arrest Wall and Holleran, but breached that duty," thus breaching his own statutory duty to report, investigate, and arrest Wall and Holleran. (Am. Compl. ¶ 39.)

The plaintiff asserts that these decisions were made without consulting her and, therefore, that the defendants' actions "deprived [her] of her statutory victim rights." (Am. Compl. ¶ 40.) She was not informed of what had transpired until December 2, 2016, when she contacted Bean to find out. (Am. Compl. ¶¶ 41, 42.) The plaintiff also provided the Sumner County District Attorney with a copy of Bean's written report, but the district attorney declined to prosecute Wall and Holleran. (Am. Compl. ¶ 47.)

The plaintiff sought legal counsel. On December 12, 2016, the plaintiff's attorney contacted Sumner County's Law Director, Leah Dennen, to inform her that the plaintiff had been the victim of aggravated assault on jail premises by two officers with the Sumner County Sheriff's Office, that the plaintiff was required to come into regular contact with Wall and

Holleran while on the job, and that, as a result, she was being subjected to a hostile work environment. (Am. Compl. ¶¶ 45–46; Orig. Compl. Ex. F, Doc. No. 1-6.) The plaintiff's attorney requested, on her behalf, that she be placed on administrative leave with pay until the matter was resolved. (Am. Compl. ¶ 46; Orig. Compl. Ex. F, Doc. No. 1-6.) Sumner County denied the plaintiff's request for leave without pay, and the plaintiff continued to work because she needed the job. (Am. Compl. 67.)

The new allegations in the plaintiff's Amended Complaint primarily concern back-and-forth correspondence between plaintiff's counsel and defense counsel concerning the plaintiff's deteriorating mental health as a result of her continued exposure to what she deemed a hostile work environment, her continued demands that the Sumner County Sheriff's Office place Wall and Holleran on administrative leave and conduct an actual criminal investigation into their actions, and the defendant's assertion that the Sheriff's Office had determined that Wall and Holleran had not committed a crime. In the course of this correspondence, according to the plaintiff, defense counsel admitted that Bean made the determination, even before interviewing them, that Wall and Holleran had not committed a crime. (Am. Compl. ¶¶ 68–74 & Exs. I–J, Doc. Nos. 26-1, 26-2.) The plaintiff asserts that this means that Bean "had already prejudiced the case even before he knew what Wall/Holleran would have to say, particularly since he based his opinion on their state of minds, thereby indicating that Sgt. Bean's investigation was a pretext to protect Wall/Holleran from criminal prosecution. This act by the Defendant Sgt. Bean effectively denied the Plaintiff access to criminal justice as a victim of a violent crime." (Am. Compl. ¶ 75.)

On May 22, 2017, the plaintiff received a Preliminary Report from psychiatrist Dr. William Kenner, who diagnosed the plaintiff with post traumatic stress disorder ("PTSD"). (Am. Compl. ¶ 76; Doc. No. 8.) Dr. Kenner further opined that the atmosphere at the Sumner County

Sheriff's Office was unsupportive of the plaintiff and that continuing to work there would damage her health and prolong her symptoms. Plaintiff's counsel informed the defendants of Dr. Kenner's assessment and provided them with a copy of the Preliminary Report. (Am. Compl. ¶¶ 76, 77 & Ex. K.)

Based on Dr. Kenner's conclusion that continued employment with the Sumner County Sheriff's Office would be detrimental to her mental health, the plaintiff left her employment effective May 25, 2017. She alleges that she was constructively discharged as a result of the hostile work environment created by the defendants. On May 30, 2017, defense counsel acknowledged the plaintiff's decision to leave her employment and notified plaintiff's counsel that the defendants considered her to have resigned. (Am. Compl. ¶¶ 77, 78 & Ex. K.)

Based on these allegations, the plaintiff purports to state the following claims against the various defendants:

(1)      A claim under 42 U.S.C. § 1983,

      (a) against Wall and Holleran on the basis that these defendants, while acting under color of law, deprived the plaintiff of her rights to liberty and equal protection, when they committed the offense of aggravated assault against her on the premises of the Sumner County Sheriff's Office by creating a hostile work environment after she reported their actions; and

      (b) against Smart, Bean, Pickard, and Weatherford on the basis that these defendants, while acting under color of law, deprived the plaintiff her rights to liberty, due process (substantive and procedural), and equal protection by failing to report, investigate, and cause the arrests of Wall and Holleran and by tolerating and causing a hostile work environment and forcing a constructive discharge;

(c) against the Sumner County Sheriff's Office based on a failure to train and supervise.

(2)     A claim under 42 U.S.C. § 1981 against the Sumner County Sheriff's Office and the individual defendants;

(3)     Claims of hostile work environment, constructive discharge, and retaliation in violation of Title VII[3] and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-2-101 *et seq.*, against the Sumner County Sheriff's Office, based on the hostile work environment the plaintiff endured as a result of the conduct of individual defendants who were motivated by the plaintiff's age, race, and sex; and based on her constructive discharge;

(4)     Claims under 42 U.S.C. § 1985 against all defendants based on a conspiracy to deprive the plaintiff of her right to equal protection; and

(5)     Supplemental state law claims against Wall and Holleran for assault, battery, outrageous conduct, and intentional infliction of mental distress, and against the Sumner County Sheriff's Office under a *respondeat superior* theory and based on its own negligence.

The plaintiff seeks compensatory and punitive damages, front pay or reinstatement and all other equitable and legal relief to which she is entitled.

## II.     Standard of Review

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of

---

[3] The plaintiff filed an EEOC charge and was provided notice of her right to sue dated December 20, 2016. (*See* Orig. Compl. Exs. 7–8, Doc. Nos. 1-7, 1-8.)

the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.  Discussion

### A.  Section 1983 Claims

#### 1.  Claims Against Wall and Holleran

The defendant argues that (1) the plaintiff fails to show that Wall and Holleran were acting "under color of law" when they pointed a loaded weapon at her; and (2) the plaintiff's claims against Wall and Holleran "do not fit into the equal protection framework." (Doc. No. 19, at 9.) In response to the Motion to Dismiss the Amended Complaint, the plaintiff utterly fails to address the question of whether Wall and Holleran were acting under color of state law. In her response to the original Motion to Dismiss, however, she argues that the defendants somehow admitted that Wall and Holleran were acting under color of law when the Sumner County Sheriff's Office took disciplinary action against them based on their conduct.

"A § 1983 claim must present two elements: (1) that there was the deprivation of a right

secured by the Constitution and (2) that the deprivation was caused by a person acting under color of state law." *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003). "The traditional definition of acting under color of state law requires that the defendant . . . exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49–50 (1988) (internal citation and quotation marks omitted).

Citing *West*, the Sixth Circuit has recognized that "Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office." *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001). "The key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law. Logically, then, not every action undertaken by a person who happens to be a state actor is attributable to the state." *Id.* (citing *West*, 487 U.S. at 50). Thus, "the acts of state officials 'in the ambit of their personal pursuits' do not constitute state action." *Id.* (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). "[A] defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law." *Id.* "The fact that a police officer is on or off duty, or in or out of uniform is not controlling. 'It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law.'" *Burris v. Thorpe,* 166 F. App'x 799, 802 (6th Cir. 2006) (quoting *Stengel v. Belcher*, 522 F.2d 438, 441 (6th Cir. 1975)).

Based on these principles, the Sixth Circuit has repeatedly held that a police officer does

not act under color of state law when he acts completely outside the authority of his office. *See, e.g.*, *Burris*, 166 F. App'x at 800, 802–03 (holding that a police officer, "even while on duty and in uniform," did not act under color of state law when he engaged in consensual sexual intercourse with a civilian during a "citizen ride-along"); *McNeese v. Vandercook*, 173 F.3d 429 (Table), 1999 WL 133266, at *2 (6th Cir. Feb. 25, 1999) (holding that a deputy sheriff who struck a fellow deputy while on the job waiting for roll call did not act under color of state law); *Mooneyhan v. Hawkins*, 129 F.3d 1264 (Table), 1997 WL 685423, at *4 (6th Cir. Oct. 29, 1997) (holding that a police officer did not act under color of state law when he took advantage of his friendship with the plaintiff, not his authority as a police officer, to rape her).

In attempt to avoid dismissal of her § 1983 claims against them, the plaintiff argued, in her Response to the defendants' Motion to Dismiss her original Complaint, that the defendants admitted that Wall and Holleran were acting under color of state law when Bean noted in his official report that if officers are in uniform or "do anything that would bring embarrassment or discredit" to the office, then the Sheriff's Office "could intervene on off-duty behavior." (Doc. No. 9, at 7 (quoting Doc. No. 1, Ex. B, at 3).) In addition, the defendants approved the taking of disciplinary action against Wall and Holleran based on their conduct. This evidence, however, does not suggest that the officers were acting under color of law. It merely establishes that they could be disciplined for actions taken while off duty and not acting under color of law.

Even viewed in the light most favorable to the plaintiff, the facts establish that Wall and Holleran were not acting under color of state law during the incident giving rise to the plaintiff's claims. Neither officer purported to exercise his authority as a police officer in aiming a firearm at the plaintiff, and the gun at issue was a personal weapon, not one issued by the Sumner County Sheriff's Office. The defendants were off duty at the time of the event, having been

released from their shift at the jail. Their actions are not "fairly attributable" to the state. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The court finds that the plaintiff fails to state a claim under § 1983 against Wall and Holleran, because she has failed to show that they were acting under color of state law. Their motion to dismiss the § 1983 claim against them will therefore be granted.

### 2. Claims Against Smart, Bean, Pickard, and Weatherford

The plaintiff asserts that Smart, Bean, Pickard, and Weatherford, while acting under color of state law, violated her right to liberty, due process, and equal protection when they violated their obligations under state law to "report, investigate, and cause the arrests of Wall and Holleran" (Am. Compl. ¶ 48.) Specifically, she maintains that, under Tennessee law, the defendants have a statutorily imposed duty "to ferret out crimes, to secure evidence of crimes, and to apprehend and arrest criminals" (Am. Compl. ¶ 14 (quoting Tenn. Code Ann. § 38-3-102(b)); to arrest any person whom they reasonably suspect of "being armed with the intention of . . . assaulting . . . another person or otherwise breaking the peace" (Am. Compl. ¶ 17 (quoting Tenn. Code Ann. § 38-3-108)); and to provide certain information to victims of violent crimes (Am. Compl. ¶ 44 (quoting Tenn. Code Ann. § 40-38-113)). The plaintiff insists that the defendants' failure to carry out these duties constitutes a violation of § 1983. She also claims that the defendants violated her substantive and procedural due process rights when they acted with deliberate indifference to her federally protected rights by failing to investigate and arrest Wall and Holleran. And she claims that these defendants' acts violated her substantive due-process rights because they shock the conscience. (Doc. No. 21, at 3–4.)

The defendants, in response, argue that: (1) the plaintiff's own allegations show that the defendants actually investigated the incident and disciplined Wall and Holleran, and that,

otherwise, § 1983 "cannot be used to force the state to prosecute or to establish liability for failure to prosecute" (Doc. No. 19, at 6–7 (citations omitted)); (2) the state statutes cited by the plaintiff do not create constitutional rights or duties; and (3) the alleged conduct is not conscience-shocking so as to support a substantive due process claim.

The court agrees, for the reasons explained below, that the § 1983 claims against defendants Bean, Smart, Pickard, and Weatherford are subject to dismissal.

### a. Failure to investigate, arrest or prosecute

A § 1983 action cannot be used to force the state to prosecute. *Collyer v. Darling*, 98 F.3d 211, 222 (6th Cir. 1996), *cited in Ferqueron v. Nichols*, 145 F.3d 1331 (Table), 1998 WL 246352, at *2 (6th Cir. May 6, 1998). Likewise, to the extent the plaintiff seeks to hold the supervisory officers liable in their individual capacity for failing to further investigate and to arrest Wall and Holleran, the court finds that she fails to state a claim under 42 U.S.C. § 1983. "[T]he law is clear that a private citizen has no constitutional, statutory, or common law right to require a public official to investigate or prosecute a crime." *Woods v. Miamisburg City Schs.*, 254 F. Supp. 2d 868, 873 (S.D. Ohio 2003) (citations omitted); *see also Fulson v. City of Columbus*, 801 F. Supp. 1, 6 (S.D. Ohio 1992) ("A public official charged with the duty to investigate or prosecute a crime does not owe that duty to any one member of the public, and thus no one member of the public has a right to compel a public official to act.").

Although the plaintiff could potentially assert an equal protection claim based on a failure to investigate or pursue prosecution if she alleged that the failure was based on her race or that her allegations of unlawful behavior were treated differently than similar complaints by a white person or against black officers, the plaintiff fails to allege plausible facts suggesting that the decision not to arrest or pursue prosecution was related to her race or resulted in disparate

treatment.[4] *Accord Jones v. Union Cnty., Tenn.*, 296 F.3d 417, 426 (6th Cir. 2002) (holding that the plaintiff failed provide evidence to support an equal protection claim where she failed to show that she was "intentionally and purposefully discriminated against because of her membership in a protected class"). Although the plaintiff alleges that she is African American and that defendants are white, she does not allege any facts plausibly linking the defendants' decisions to her race (or age or gender). As set forth above, to state a colorable claim, the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action"; she must, instead, plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The court therefore finds that the Amended Complaint fails to state a claim against any of the individual defendants based on the failure to investigate, arrest or prosecute.

### b. *Failure to comply with state statutes*

Even assuming that the state statutes upon which the plaintiff relies create a duty under state law,[5] the violation of a right created and recognized by state law does not amount to a constitutional violation and is not actionable under § 1983. The Sixth Circuit has held that "a violation of a state statute does not create a liberty interest or property right under the Due Process Clause of the Fourteenth Amendment." *Jones*, 296 F.3d at 429. Moreover, generally speaking, "[t]he violation of a right created and recognized only under state law is not actionable under § 1983." *Id.* (quoting *Harrill v. Blount Cnty., Tenn.*, 55 F.3d 1123, 1125 (6th Cir. 1995)). The defendants' failure to comply with their supposed obligation to pursue legal action against Wall and Holleran and to ensure that they were arrested did not violate the plaintiff's

---

[4] The plaintiff alleges that she was received disparate treatment from that of Wall and Holleran, but she fails show that they were similarly situated with her.

[5] The defendants dispute that proposition, based on state law. (*See* Doc. No. 24, at 3.)

constitutional rights.

### c.     *Deliberate indifference to conscience-shocking conduct*

The plaintiff also attempts to state a substantive due process claim based on her assertion that the defendants' conduct is so deplorable as to shock the conscience. This claim fails because the allegations in the Amended Complaint, construed in the light most favorable to the plaintiff, do not establish that any of the defendants' conduct was "so brutal and so offensive to human dignity" as to shock the conscience. *Rochin v. California*, 342 U.S. 165, 174 (1952).

The Sixth Circuit has defined this type of substantive due process claim as involving "actions that 'government officials may not take no matter what procedural protections accompany them,' alternatively known as actions that 'shock the conscience.'" *Braley v. City of Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990) (quoting *Wilson v. Beebe*, 770 F.2d 578, 585–86 (6th Cir. 1985) (en banc).[6] In *Puckett v. Lexington–Fayette Urban County Government*, 566 F. App'x 462 (6th Cir. 2014), the Sixth Circuit noted that the "'shock the conscience' strain of successful substantive due process claims is recognized 'in the exclusive context of cases involving physical abuse.'" *Id.* at 472 (quoting *Choate's Air Conditioning & Heating, Inc. v. Light, Gas, Water Div. of City of Memphis*, 16 F. App'x 323, 329 (6th Cir. 2001)). And even within that strain, conduct that "shocks the conscience" is generally "conduct that is 'so "brutal" and "offensive" that it [does] not comport with traditional ideas of fair play and decency.'" *Id.* (quoting *Handy–Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 547–48 (6th Cir. 2012)).

Here, the conduct in question is not the alleged aggravated assault by Wall and Holleran—which, however reprehensible, did not involve physical contact or physical injury.

---

[6] A § 1983 substantive due process claim must either be based on "a violation of an explicit constitutional guarantee (e.g., a fourth amendment illegal seizure violation)," which is not alleged here, "or on behavior by a state actor that shocks the conscience." *Braley*, 906 F.2d at 225.

Rather, the conduct at issue is the other individual defendants' violation of their purported duty to investigate, arrest, and prosecute Wall and Holleran for such behavior. Their conduct, a step removed from that of Wall and Holleran, also did not involve physical abuse and does not remotely qualify as conscience-shocking.

The court finds, in sum, that the Amended Complaint fails to state a claim under § 1983 against defendants Smart, Bean, Pickard, and Weatherford.

### 3. Claim Against Sumner County Sheriff's Office/Sumner County

The Amended Complaint also purports to state § 1983 claims against Sumner County and against the natural-person defendants in their official capacities. (*See* Orig. and Am. Compl. ¶¶ 3–8.) The official capacity claims are equivalent to claims against the government entity that employs them. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 90 n.55 (1978).

To establish municipal liability under § 1983, the plaintiff must demonstrate both (1) the deprivation of a constitutional right, and (2) that the municipal entity is responsible for that deprivation. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "For liability to attach, both questions must be answered in the affirmative." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 506 (6th Cir. 1996). That is, to establish that Sumner County *caused* the underlying constitutional violation, the plaintiff must actually establish the predicate constitutional violation.

Here, the court has concluded that the Amended Complaint fails to allege facts showing that any of the individual defendants violated the plaintiff's constitutional rights for purposes of stating a claim under § 1983. *A fortiori*, the plaintiff cannot establish liability on the part of Sumner County for having caused any such constitutional violation. Accordingly, the official-capacity claims against the natural-person defendants and the claim against the municipality

under § 1983 are also subject to dismissal for failure to state a claim for which relief may be granted.

**B.  Section 1981 Claim**

In the original Complaint, the plaintiff alleges that the defendants' actions violated 42 U.S.C. § 1981. In her Response to the defendants' first Motion to Dismiss, the plaintiff states that, in light of *McCormick v. Miami Univ.*, 693 F.3d 654 (6th Cir. 2012), she is withdrawing her claim under § 1981.[7] (Doc. No. 9, at 2.) Because the plaintiff has withdrawn the claim and does not assert a § 1981 claim in the Amended Complaint, the motion to dismiss this claim is moot.

**C.  Section 1985(3) Claim**

Section 1985 prohibits conspiracies "for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3). To prevail on a § 1985(3) claim, a plaintiff must prove "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003) (quoting *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983)). The Supreme Court has also stated that "[t]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means there must be some racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions." *Griffin v. Breckenridge*, 403 U.S. 88,

---

[7] *McCormick* establishes that "§ 1983 is the exclusive mechanism to vindicate violations of § 1981 by an individual state actor" acting in either his official or individual capacity. *McCormick*, 693 F.3d at 660, 661.

102 (1971).

The precise basis for the plaintiff's § 1985(3) claim is unclear. The Amended Complaint states only: "Plaintiff alleges that the facts set forth herein constitutes [sic] a conspiracy among the Defendants to deny her equal protection under 42 U.S.C. § 1985." (Am. Compl. ¶ 59.) Thus, as the court understands it, the alleged conspiracy involves the failure of the individual defendants and, arguably, the prosecuting attorney, to investigate, arrest, and prosecute Wall and Holleran for their actions. The court finds that the Amended Complaint fails to state a claim under § 1985(3) for two reasons.

First, as demonstrated above, the plaintiff's allegations are insufficient to establish a violation of her equal protection rights for purposes of stating a claim under § 1983. Consequently, the defendants also cannot be liable, based on the same actions, for conspiring to violate the plaintiff's equal protection rights. *Accord Thompson v. City of Memphis*, 86 F. App'x 96, 103 (6th Cir. 2003) ("Thompson's claims under both § 1983 and § 1985(3) thus depend on hi[s] successfully establishing that the defendants discriminated against him . . . . If he was not discriminated against, there has been no violation of his right to equal protection and no conspiracy to deprive him of his right to equal protection.").

And second, the plaintiff does not allege any facts that, if true, would establish that any of the defendants' actions was in any way motivated by racial or other class-based animus. She states only that she is African American and that the defendants are Caucasian. She leaps from that premise to the conclusion that the defendants' actions are motivated by race. More evidence, beyond the plaintiff's speculation, is needed to support such a leap. *Accord Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); (upholding the dismissal of § 1985(3) conspiracy claim where the plaintiff "produced no evidence to demonstrate that his [wrongful]

arrest . . . was in any way motivated by racial or other class-based animus"); *Bass v. Robinson*, 167 F.3d 1041, 1051 (6th Cir. 1999) (upholding dismissal of conspiracy claim where the plaintiff failed to show that police officers' use of excessive force was motivated by any invidious class-based animus).

The § 1985 conspiracy claim will be dismissed on both grounds.

**D.     Title VII Claims**

**1.     Hostile Work Environment Claim Against Sumner County Sheriff's Office/Sumner County**

A hostile work environment claim under Title VII requires proof that:

(1) plaintiff belongs to a protected class; (2) she was subject to unwelcome harassment; (3) the harassment was based on [her membership in the protected class]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known about the harassment and failed to take action.

*Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017) (citing *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1078–79 (6th Cir. 1999). Without conceding that the facts as alleged establish the existence of a hostile work environment, the defendants focus their argument on whether the plaintiff has shown either that the alleged harassment was motivated by her membership in a protected class or that the employer knew of the alleged harassment and failed to take corrective action.

"Conduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, she would not have been the object of harassment." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007). The defendants here argue that the plaintiff has not shown that race played any part in the alleged harassment or the SCSO's disciplinary decisions.

In *Clay*, the plaintiff did not allege that any expressly racial comments were made in the

workplace, but she alleged that "the facially neutral conduct of her supervisor towards her was, in fact, based on her race." *Id.* In support of that theory, she submitted affidavits from herself and two co-workers that stated that her supervisor singled her out and criticized her for conduct "in which her white counterparts engaged with impunity," *id.*, including, for example, eating a doughnut while waiting for a coworker, the route she took to get to her work station, leaving her work station to get a cup of coffee, using the bathroom at the end of a break, and the size of her earrings. *Id.* The court found that the affidavits describing these incidents "set forth specific conduct for which [the plaintiff] was berated and for which her white co-workers were not; thus, the district court erred in finding that these affidavits did not provide sufficient detail." *Id.*

Conversely, in this case, the plaintiff does not allege any facts suggesting race-based harassment other than the fact that she is black and the defendants are white. The plaintiff asserts that the supervisory defendants' pursuit of a grievance procedure, rather than a criminal prosecution, was a "gross violation of procedure and law [that] was discriminatory because it favored young Caucasian males at the expense of an older African-American female. (Am. Compl. ¶ 35.) She maintains that denying her request for paid leave had the effect of continuing to expose her a hostile work environment, but she does not explain how the environment was hostile, because she does not allege that any other harassing conduct occurred after the October 2016 incident in the parking lot, other than the SCSO's refusal to move Wall and Holleran to a different shift so the plaintiff would not come in contact with them.[8] Instead of facts, the plaintiff

---

[8] Correspondence between counsel for the plaintiff and the defendants attached to the Amended Complaint indicates that the SCSO offered to move the plaintiff to a different shift, but she refused, so neither she nor Wall and Holleran were moved. She asserts in her EEOC charge that, "[e]ver since the incident, [her] co-workers"—presumably referring to Wall and Holleran— "have treated [her] in an aggressive manner." (Doc. No. 1-7.) But she does not include that allegation or describe such behavior in her Amended Complaint—or show how it was related to her protected status.

supports her claim with conclusory, unsupported assertions, including that the grievance procedure "favored young Caucasian males at the expense of an older African-American female" (Am. Compl. ¶ 35); that the rejection of her claim for paid leave exposed her to "a hostile work environment based on her race" (Am. Compl. ¶ 46); and that the defendants' actions were pretextual insofar as they demonstrated that the SCSO "favored Defendants Wall and Holleran, at the Plaintiff's expense, thereby creating a hostile work environment based on her race, age, and sex." (Am. Compl. ¶ 82.)

Allegations that a plaintiff belongs to a protected class and has been subject to harassing behavior are simply not sufficient to state a hostile work environment claim. *See, e.g.*, *Hairston v. Dep't of Veterans Affairs*, No. 1:15-CV-660, 2015 WL 9304558, at *4 (W.D. Mich. Dec. 21, 2015) ("[T]he fact of a protected status is not enough; [the plaintiff] must allege harassment based on that protected status."). The factual content in this case—as distinct from the conclusory and speculative assertions—does not show that any ongoing harassing behavior occurred or that the purported harassment was racially motivated.

Because the plaintiff has not alleged facts suggesting that the conduct about which she complains was motivated by her protected status as an "older" African-American woman, the court finds that she fails to state a claim of hostile work environment, without reaching the question of whether the employer is liable for any purported harassing behavior.

### 2. Constructive Discharge

The plaintiff alleges in the Amended Complaint that the defendants, "acting both in their individual and official capacities, created a hostile work environment beginning when Plaintiff was assaulted on October 22, 2016 and continuing to May 25, 2017, which caused her constructive discharge." (Am. Compl. ¶ 79.) She alleges that the defendants, "acting in both their

individual and official capacities, deliberately created intolerable working conditions as perceived by a reasonable person and did so with the intentions of forcing the Plaintiff to leave her job." (Am. Comp. ¶ 80.)

To prevail on a constructive discharge allegation based on a hostile work environment, the plaintiff "must show harassing behavior sufficiently severe or pervasive to alter the conditions of [her] employment" and "that the abusive working environment became so intolerable that [her] resignation qualified as a fitting response." *Penn. State Police v. Suders*, 542 U.S. 129, 133, 134 (2004). "In other words, workplace harassment that is severe and pervasive enough to create a hostile work environment may in some circumstances constructively discharge the employee." *Plautz v. Potter*, 156 F. App'x 812, 819 (6th Cir. 2005).

In a case where, as here, the plaintiff has failed to allege facts supporting her hostile work environment claim, which is a predicate of her constructive discharge claim, she necessarily fails to allege sufficient facts to support a constructive discharge claim. *See Suders*, 542 U.S. at 149 ("Creation of a hostile work environment is a necessary predicate to a hostile-environment constructive discharge case."); *Plautz*, 156 F. App'x at 819 ("We have already decided that the complained of actions do not rise to the level of creating a hostile work environment, and therefore they necessarily do not rise to the level of compelling a reasonable person to resign."); *Cooper v. Jackson-Madison County Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 957 (W.D. Tenn. 2010) ("Because the Court has already held that Cooper has not alleged facts sufficient to prove that he suffered a hostile work environment, it is not necessary to analyze his hostile work environment constructive discharge claim. Cooper's contention is predicated on the same facts as his hostile work environment claim, and the constructive discharge claim likewise fails.").

The plaintiff's constructive discharge claim must be dismissed for failure to state a claim.

### 3.    Retaliation

The plaintiff mentions the term "retaliation" twice in her Amended Complaint, first to assert that "all of the relevant facts set forth [in the Amended Complaint] establishes [sic] her claims for discrimination and retaliation under Title VII and [the THRA]" (Am. Compl. ¶ 84); and again to allege that "the Defendants' failure to make a reasonable accommodation to her exposure to a hostile work environment was done in violation of her seeking civil rights and therefore constitutes retaliation" (Am. Compl. ¶ 87).

The defendants do not construe the Amended Complaint as stating an actionable claim for retaliation and do not address any such claim. In her Response to the Motion to Dismiss the Amended Complaint, the plaintiff quotes at length paragraphs 79 through 84 in support of her argument that the Amended Complaint alleges sufficient facts to state claims for hostile work environment and constructive discharge. (*See* Doc. No. 21, at 5–6.) Otherwise, she does not explain how the Amended Complaint articulates a Title VII retaliation claim or otherwise champion such a claim.

The court finds that the Amended Complaint, despite its passing reference to the term "retaliation," cannot reasonably be construed to state a retaliation claim. Title VII prohibits discrimination against an employee because that employee has engaged in conduct protected by Title VII. 42 U.S.C. § 2000e–3(a). "The opposition clause of Title VII makes it 'unlawful . . . for an employer to discriminate against any . . . employe[e] . . . because he has opposed any practice made . . . unlawful . . . by this subchapter.'" *Laster v. City of Kalamazoo*, 746 F.3d 714 (6th Cir. 2014) (alterations in original; quoting 42 U.S.C. § 2000e–3(a)).

The plaintiff's Incident Report to her supervisors concerning Wall and Holleran is not activity protected by Title VII, because it does not allege that their actions were discriminatory or

motivated by discriminatory animus. The plaintiff did engage in protected activity later, when she filed an EEOC claim and, arguably, when her attorney wrote letters to counsel for the defendants. However, although she alleges that she was constructively discharged, she does not actually allege that the defendants took any adverse action after she engaged in protected activity that would support a retaliation claim. Rather, they continued to do what they had done since closing the investigation on the plaintiff's Incident Report, upholding her charge, and taking disciplinary action against Wall, Holleran, and Smart. That is, they did nothing.[9] They took no action—"because" of the plaintiff's protected activity or otherwise. Moreover, because the plaintiff fails to state a hostile work environment claim or a constructive discharge claim, and because the defendant's position remained the same both before and after the protected activity, the SCSO's inaction cannot be construed as retaliatory either.

To the extent the plaintiff intended to state a retaliation claim in the Amended Complaint, she did not adequately signal that intent for purposes of putting the defendants on notice of such a claim. And, even if she intended to state such a claim, the court finds that the Amended Complaint does not allege sufficient facts to support such a claim.

### E. Tennessee Human Rights Act Claims

The Amended Complaint also purports to state a claim under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4-21-101 *et seq.* (Am. Compl. Part C, "Claims Under Title VII and T.C.A. § 4-12-101 *et seq.*").) Claims under Title VII and the THRA are analyzed identically. *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008). A conclusion that the plaintiff fails to state a claim under Title VII requires dismissal of her THRA claims as well.

---

[9] The email correspondence attached to the Amended Complaint indicates that, in response to the plaintiff's demands, the SCSO offered to move her to a different shift, but the plaintiff refused the offer. The plaintiff does not allege in her Amended Complaint she was actually required to move to a different shift.

*See, e.g.*, *Saulsberry v. Fed. Express Corp.*, 552 F. App'x 424, 430 (6th Cir. 2014) (dismissing claims in tandem); *Jackson v. Bd. of Educ.*, 494 F. App'x 539, 543 n.1 (6th Cir. 2012) (citing *Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir. 2001), for the proposition that a "plaintiff's failure to establish a Title VII prima facie case governs the outcome of [her] THRA claims").

Because the plaintiff fails to state a claim for which relief may be granted under Title VII, her THRA claim must also be dismissed.

### F.      Other State Law Claims

The court has now concluded that the Amended Complaint fails to state colorable claims under federal law over which this court has federal question jurisdiction. 28 U.S.C. § 1331.The plaintiff also asserts assorted Tennessee common law tort claims against Wall and Holleran, including claims of assault, battery, outrageous conduct, and intentional infliction of mental distress. She also maintains that the SCSO is vicariously liable for its employees' actions under the doctrine of *respondeat superior* and "owner liability." (Am. Compl. ¶ 60.)

The court has supplemental jurisdiction over these claims, as they are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, under § 1367(c)(3), the court may decline to exercise such supplemental jurisdiction once it has "dismissed all claims over which it has original jurisdiction." Under this authority, the court will decline to exercise supplemental jurisdiction over the plaintiff's state law claims and will, therefore, dismiss such claims without prejudice.

## IV.   Conclusion

For the reasons set forth herein, the Amended Complaint will be dismissed in its entirety.

The plaintiff's federal claims will be dismissed with prejudice, and her state claims will be dismissed without prejudice. An appropriate Order is issued herewith.

ENTER this 20th day of September 2017.

_____
ALETA A. TRAUGER
United States District Judge